## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ANTHONY PISZEL, | Case No. 1:14-cv-00691-LKG |
| Plaintiff, | Judge Lydia Kay Griggsby |
| vs. | **NOTICE OF APPEAL** |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

Notice is hereby given that Plaintiff-Appellant Anthony Piszel hereby appeals to the United States Court of Appeals for the Federal Circuit from the final judgment entered in this action on June 16, 2015.

Dated:  June 16, 2015

Respectfully submitted,

MURPHY & MCGONIGLE, P.C.

By: /s/ William E. Donnelly
    William E. Donnelly
    *wdonnelly@mmlawus.com*
    Attorney of Record
    555 13th Street, N.W., Suite 410
    Washington, D.C.  20004
    (202) 661-7000

    James K. Goldfarb
    *jgoldfarb@mmlawus.com*
    Michael V. Rella
    *mrella@mmlawus.com*
    1185 Avenue of the Americas, 21st Fl.
    New York, New York  10036
    (212) 880-3999

    *Attorneys for Plaintiff-Appellant*
    *Anthony Piszel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 16, 2015, a copy of the foregoing Notice of Appeal was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

_____/s/ William E. Donnelly_____

4813-7948-4453

# United States Court of Appeals for the Federal Circuit
## In the United States Court of Federal Claims
### Appeal Information Sheet

**Assigned to:**       Judge Lydia Kay Griggsby

Referred to:

**Nature of Suit:** 514

**Type of Case**: Taking - Other

**ANTHONY PISZEL,**

    **v.**

   *Plaintiffs,*

    v.

**THE UNITED STATES**,

   *Defendant,*

---

**Docket No**. 14-691 C.

**Cross or Related**? No.

**Appellant is**. Plaintiff.

**Date  Judgment Entered**: June 16, 2015.

**Date of Appeal:** June 16, 2015.

**Fee**: $505.00.

---

*See docket sheet for defendant and plaintiff counsel representation information*

APPEAL,AUTO,CLOSED,ECF

# US Court of Federal Claims
## United States Court of Federal Claims (COFC)
## CIVIL DOCKET FOR CASE #: 1:14-cv-00691-LKG
### Internal Use Only

PISZEL v. USA

Assigned to: Judge Lydia Kay Griggsby

Referred to: Senior Judge Eric G. Bruggink

Cause: 28:1491 Tucker Act

Date Filed: 08/01/2014

Date Terminated: 06/16/2015

Jury Demand: None

Nature of Suit: 514 Taking - Other

Jurisdiction: U.S. Government
Defendant

**Plaintiff**

**ANTHONY PISZEL**                    represented by    **William Edward Donnelly**
Murphy and McGonigle
555 13th Street, NW
Suite 410W
Washington, DC 20004
(202) 661-7011
Email: wdonnelly@mmlawus.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**USA**                    represented by    **David Allen Harrington**
U. S. Department of Justice - Civil Div.
Post Office Box 480
Ben Franklin Station
Washington, DC 20044
(202) 616-0465
Fax: (202) 305-7644
Email: David.Harrington@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/16/2015 | 29 | NOTICE OF APPEAL as to 28 Judgment, filed by ANTHONY PISZEL. Filing fee $ 505, receipt number 9998-2854133. Copies to judge, opposing party and CAFC. (Donnelly, William) (Entered: 06/16/2015) |
| 06/16/2015 | 28 | JUDGMENT entered, pursuant to Rule 58, dismissing the complaint. Each party shall bear their own costs. (Copy to parties) (dls) (Entered: |

| | | 06/16/2015) |
|---|---|---|
| 06/12/2015 | 27 | REPORTED OPINION granting 11 Defendant's Motion to Dismiss. The Clerk is directed to enter judgment. Signed by Judge Lydia Kay Griggsby. (ps) Copy to parties. (Entered: 06/12/2015) |
| 06/03/2015 | 🔒 26 | TRANSCRIPT of Proceedings held on Jun 2, 2015 before Judge Lydia K. Griggsby. Total No. of Pages: 1-54. Procedures Re: Electronic Transcripts and Redactions. To order a copy of the proceeding (click HERE) Notice of Intent to Redact due 6/10/2015. Redacted Transcript Deadline set for 7/6/2015. Release of Transcript Restriction set for 9/3/2015. (ew) (Entered: 06/05/2015) |
| 06/03/2015 | 25 | Notice Of Filing Of Certified Transcript for proceedings held on June 2, 2015 in Washington, D.C. (ew) (Entered: 06/05/2015) |
| 06/02/2015 | | Minute Entry - Was the proceeding sealed to the public? no. Proceeding held in Washington, DC on 6/2/2015. before Judge Lydia Kay Griggsby: Oral Argument. [Total number of days of proceeding: 1]. Official record of proceeding taken by court reporter. To order a certified transcript or an audio copy of the proceeding (click HERE)(ps) (Entered: 06/02/2015) |
| 05/26/2015 | 24 | ORDER regarding issues to address during oral argument, Tuesday, June 2, 2015 Signed by Judge Lydia Kay Griggsby. (ps) Copy to parties. (Entered: 05/26/2015) |
| 04/21/2015 | 23 | SCHEDULING ORDER: **Oral Argument on defendant's motion to dismiss set for 6/2/2015 at 02:00 PM before Judge Lydia Kay Griggsby.** Signed by Judge Lydia Kay Griggsby. (ps) Copy to parties. (Entered: 04/21/2015) |
| 03/10/2015 | 22 | REPLY to Response to Motion re 11 MOTION to Dismiss pursuant to Rules 12(b)(1) and (6) , filed by USA. (Attachments: # 1 Exhibit A-C) (Harrington, David) (Entered: 03/10/2015) |
| 03/10/2015 | 21 | ORDER granting 20 Motion for Leave to File Excess Pages Signed by Judge Lydia Kay Griggsby. (ps) Copy to parties. (Entered: 03/10/2015) |
| 03/10/2015 | 20 | Unopposed MOTION for Leave to Exceed Page Limit of Defendant's Reply in Support of its Motion to Dismiss by 2 pages , filed by USA.**Response due by 3/27/2015.**(Harrington, David) (Entered: 03/10/2015) |
| 02/12/2015 | 19 | ORDER granting 18 Defendant's Unopposed Motion for Enlargement of Time to File Its Reply in Support of Its Motion to Dismiss. **Reply due by 3/10/2015.** Signed by Judge Lydia Kay Griggsby. (ps) Copy to parties. (Entered: 02/12/2015) |
| 02/12/2015 | 18 | Unopposed MOTION for Extension of Time until March 10, 2015 to File Reply as to 17 Response to Motion , filed by USA.**Response due by 3/2/2015.**(Harrington, David) (Entered: 02/12/2015) |
| 01/30/2015 | 17 | RESPONSE to 11 MOTION to Dismiss pursuant to Rules 12(b)(1) and (6) , filed by ANTHONY PISZEL.**Reply due by 2/9/2015.** (Donnelly, |

| | | William) (Entered: 01/30/2015) |
|---|---|---|
| 01/07/2015 | 16 | NOTICE of Reassignment. Case reassigned to Judge Lydia Kay Griggsby for all further proceedings. Judge Edward J. Damich no longer assigned to the case. (dls) (Entered: 01/07/2015) |
| 01/07/2015 | 15 | ORDER TRANSFERRING CASE to Judge Lydia Kay Griggsby. Signed by Chief Judge Patricia E. Campbell-Smith. (ss5) Copy to parties. (Entered: 01/07/2015) |
| 12/15/2014 | 14 | ORDER granting 13 Motion for Extension of Time. Plaintiff shall file his opposition on or before January 30, 2015. Signed by Judge Edward J. Damich. (mch) Copy to parties. (Entered: 12/15/2014) |
| 12/15/2014 | 13 | Unopposed MOTION for Extension of Time until 1/30/15 to file opposition *to Defendant's Motion to Dismiss Plaintiff's Complaint*, filed by ANTHONY PISZEL.**Response due by 1/5/2015.**(Donnelly, William) (Entered: 12/15/2014) |
| 12/15/2014 | 12 | NOTICE of Designation of Electronic Case. (vro) (Entered: 12/15/2014) |
| 11/25/2014 | 11 | MOTION to Dismiss pursuant to Rules 12(b)(1) and (6) , filed by USA.**Response due by 12/29/2014.**(Harrington, David) (Entered: 11/25/2014) |
| 11/19/2014 | 10 | SPECIAL PROCEDURES ORDER. Signed by Judge Edward J. Damich. (EJ1) Copy to parties. (Entered: 11/19/2014) |
| 11/14/2014 | 9 | ORDER granting 8 Motion for Extension of Time to Answer. **Answer due by 11/25/2014. No further extensions shall be granted.** Signed by Judge Edward J. Damich. (lp1) Copy to parties. (Entered: 11/14/2014) |
| 11/13/2014 | 8 | MOTION for Extension of Time until 11/25/2014 to File Answer re 1 Complaint, , filed by USA.**Response due by 12/4/2014.**(Harrington, David) (Entered: 11/13/2014) |
| 10/01/2014 | 7 | ORDER granting 6 Motion for Extension of Time to Answer.**Answer due by 11/17/2014.** Signed by Judge Edward J. Damich. (lp1) Copy to parties. (Entered: 10/01/2014) |
| 09/30/2014 | 6 | Unopposed MOTION for Extension of Time until 11/17/2014 to File Answer re 1 Complaint, , filed by USA.**Response due by 10/17/2014.** (Harrington, David) (Entered: 09/30/2014) |
| 09/18/2014 | 5 | ORDER re: Notice of ADR Automatic Program Procedures. Signed by Senior Judge Eric G. Bruggink. (SWF) Copy to parties. (Entered: 09/18/2014) |
| 09/04/2014 | 4 | NOTICE of Appearance by David Allen Harrington for USA .. (Harrington, David) (Entered: 09/04/2014) |
| 08/01/2014 | 3 | NOTICE of Assignment to Judge Eric G. Bruggink for Auto ADR proceedings. (ac7) (Entered: 08/04/2014) |
| 08/01/2014 | 2 | NOTICE of Assignment to Judge Edward J. Damich. (ac7) (Entered: |

| | | 08/04/2014) |
|---|---|---|
| 08/01/2014 | 1 | COMPLAINT against USA (O) (Filing fee $400, Receipt number 077016) (Copy Served Electronically on Department of Justice), filed by ANTHONY PISZEL.**Answer due by 10/2/2014.** (Attachments: # 1 Civil Cover Sheet)(ac7) (Entered: 08/04/2014) |

# In the United States Court of Federal Claims

No. 14-691C
(Filed:  June 12, 2015)

| | |
|---|---|
| ANTHONY PISZEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Rule 12(b)(1); Subject-Matter |
| v. ) | Jurisdiction; Rule 12(b)(6); Failure to |
| ) | State a Claim; Fifth Amendment Takings; |
| THE UNITED STATES, ) | Illegal Exaction. |
| ) | |
| Defendant. ) | |
| ) | |

William E. Donnelly, Murphy & McGonigle, P.C., Washington, D.C., James K. Goldfarb, and Michael V. Rella, Murphy & McGonigle, P.C., New York, N.Y., Attorneys for Plaintiff.

David A. Harrington, Senior Trial Counsel, Franklin E. White, Jr., Assistant Director, Robert E. Kirschman, Jr., Director, Christopher C. Mizer, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., Attorneys for Defendant, and Michael Sitcov, Federal Housing Finance Agency, of Counsel, Washington, D.C.

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Plaintiff, Anthony Piszel, brought this action alleging an illegal exaction and contract-based takings of his severance compensation under an employment agreement with the Federal Home Loan Mortgage Corporation, in violation of the Fifth Amendment of the United States Constitution.  The government has moved to dismiss plaintiff's claims for lack of subject-matter jurisdiction and for failure to state a claim, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  For the reasons set forth below, the government's motion to dismiss is **GRANTED**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

Plaintiff, Anthony Piszel, is the former Chief Financial Officer of the Federal Home Loan Mortgage Corporation ("Freddie Mac").  Compl. at ¶ 1.  Prior to joining Freddie Mac in 2006, plaintiff accrued $8.1 million in unpaid compensation from his former employer.  *Id.* at ¶¶ 2, 16.  As an incentive to join Freddie Mac and to forego this compensation, Freddie Mac offered to provide plaintiff with certain employment benefits if he were to be terminated from his job without cause during the first four years of his employment.  *Id.* at ¶ 4, 22-25.  Specifically, plaintiff's employment agreement provided that, should he be terminated without cause, plaintiff would receive a lump sum cash payment and certain restricted stock units awarded to plaintiff would be allowed to continue to vest.  *Id.*

Freddie Mac is a government-sponsored enterprise ("GSE").  *See* 12 U.S.C. §§ 1451-1459 (2008).  In 1992, Congress established the Office of Federal Housing Enterprise Oversight ("OFHEO") to regulate Freddie Mac, pursuant to the Federal Housing Enterprises Financial Safety and Soundness Act of 1992 ("Safety and Soundness Act").  Compl. at ¶ 11.  Since that time, Freddie Mac has been subject to regulatory oversight and the potential for conservatorship.  *See* Federal Housing Enterprises Financial Safety and Soundness Act of 1992, Pub. L. No. 102–550, §§ 1301–95, 106 Stat. 3672, 3941–4012; 12 U.S.C. § 4617(b) (1992) (establishing OFHEO).  OFHEO, acting in its capacity as the regulatory agency for Freddie Mac, reviewed and approved plaintiff's employment agreement in 2006.  Compl. at ¶¶ 5, 21.

In response to great economic turmoil within the national housing market, Congress enacted the Housing and Economic Recovery Act ("HERA") on July 30, 2008, to provide for greater regulatory authority over the housing sector.  *See* Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654; 42 U.S.C. § 4501 *et seq*.  HERA, among other things, replaced OFHEO with the newly created Federal Housing Finance Agency ("FHFA").

---

[1] The facts recounted in this Memorandum Opinion and Order are taken from the plaintiff's complaint cited in this Memorandum Opinion and Order as ("Compl. at ___"), the defendant's motion to dismiss ("Def. Mot. at __"), plaintiff's opposition to the motion to dismiss ("Pl. Opp. at __"), and defendant's reply ("Def. Rep. at __").  For the purpose of this Memorandum Opinion and Order, the Court accepts all undisputed facts in the plaintiff's complaint as true.

Compl. at ¶ 36.  HERA also gave the Director of FHFA expanded authority to prohibit or limit any golden parachute or indemnification payment to senior executives who were employed by Freddie Mac and expanded the government's authority to place Freddie Mac into conservatorship.  Compl. at ¶¶ 38-39; *see also* 12 U.S.C. § 4518(e)(l).

With these new authorities in hand, the FHFA placed Freddie Mac into conservatorship on September 7, 2008.  Compl. at ¶ 7.  The following week, the Director of FHFA promulgated regulations setting forth the factors to be taken into account when seeking to limit or prohibit golden parachute payments under employment agreements with Freddie Mac. Compl. at ¶¶ 41, 44; *see also* 12 C.F.R. § 1231.5.

On September 28, 2008, the Director of FHFA instructed Freddie Mac to terminate plaintiff without cause and to withhold plaintiff's severance compensation.  Compl. at ¶¶ 52-54.  Freddie Mac complied with this directive.  *Id*. at ¶ 55.  At the time of his termination, plaintiff received 19,735 of the 78,940 restricted stocks units granted under his employment agreement.  *Id*. at ¶ 56.  Plaintiff has not received the remainder of severance compensation called for under his employment agreement.  *Id*. at ¶¶ 8, 55-57.

### B.    Procedural Background

On August 1, 2014, plaintiff commenced this action alleging an unconstitutional takings without just compensation of his property rights under his employment agreement with Freddie Mac, in violation of the Fifth Amendment.  *Id*. at ¶ 69.  Alternatively, plaintiff alleges that the government illegally exacted his property rights in violation of HERA and the Due Process Clause of the Fifth Amendment.  *Id.* at ¶ 71.

On November 25, 2014, the government moved to dismiss plaintiff's complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(1) and 12(b)(6).  *See generally* Def. Mot.  On January 30, 2015, plaintiff filed his opposition to defendant's motion to dismiss.  *See generally* Pl. Opp.  The

government filed its reply brief on March 10, 2015.  *See generally* Def. Rep.  The Court held oral argument on the government's motion on June 2, 2015.[2]

## III.    LEGAL STANDARDS

### A.    Jurisdiction and RCFC 12(b)(1)

The United States Court of Federal Claims is a court of limited jurisdiction and the Court "possess[es] only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Under the Tucker Act, the Court has limited jurisdiction to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (2011).  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . the Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists."  *United States v. Testan*, 424 U.S. 392, 398 (1976).  To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead a claim founded upon an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages.  *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself."); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . .").  Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government . . . ."  *Testan*, 424 U.S. at 400 (internal citation omitted).

When deciding a motion to dismiss based upon a lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the

---

[2] References to the transcript from the oral argument held on June 2, 2015 are cited as ("Tr. at __").

complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, plaintiff bears the burden of establishing subject-matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998), and he must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (citations omitted). Should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

### B.    Rule 12(b)(6)

When deciding a motion to dismiss based upon a failure to state a claim pursuant to RCFC 12(b)(6), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson*, 551 U.S. at 94. And so, to survive a motion to dismiss under RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In *ABB Turbo Systems AG v. TurboUSA, Inc.*, the Federal Circuit explained the interplay between RCFC 8(a)(2) and RCFC 12(b)(6), which "together establish a notice-pleading standard that is applied, in a context-specific manner, with the recognition that the imposition of litigation costs must be justified at the threshold by the presence of factual allegations making relief under the governing law plausible, not merely speculative." 774 F.3d 979, 984 (Fed. Cir. 2014). RCFC 8(a)(2) requires that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the complaint provides fair notice of the nature of claim and the grounds upon which it rests. RCFC 8(a)(2); *see also Twombly*, 550 U.S. at 555. Where the complaint fails to "'state a claim to relief that is plausible on its face,'" the Court must dismiss the complaint. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity," and determine whether it is plausible, based on these facts, to find against the defendant. *Iqbal*, 556 U.S. at 664, 678-79 ("A claim has facial plausibility when the . . . plead[ed] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

### C.    Illegal Exaction and Fifth Amendment Takings

#### 1.    Illegal Exaction

This Court has recognized that an illegal exaction occurs when a "'plaintiff has paid money over to the [g]overnment, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)).  And so, to assert a valid illegal exaction claim, a plaintiff must show that: (1) money was taken by the government and (2) the exaction violated a provision of the Constitution, a statute, or a regulation.  *Andres v. United States*, No. 03-2654, 2005 WL 6112616, at *2 (July 28, 2005).  The Federal Circuit has recognized that "the Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power." *Aerolineas*, 77 F.3d at 1573.  This Court recognizes that an illegal exaction occurs when "the Government has the citizen's money in its pocket." *Clapp v. United States*, 127 Ct. Cl. 505, 512 (1954).  In such circumstances, an action can be maintained under the Tucker Act to recover the money exacted.  *Aerolineas*, 77 F.3d at 1573.

#### 2.    Fifth Amendment Takings

The Takings Clause of the Fifth Amendment guarantees just compensation whenever private property is "taken" for public use. U.S. Const. amend. V.  The purpose of the Fifth Amendment is to prevent the "[g]overnment from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)); *see also Florida Rock Indus., Inc. v. United States*, 18 F.3d 1560, 1571 (Fed. Cir. 1994).

In order to have a cause of action for a Fifth Amendment takings, the plaintiff must point to a protectable property interest that is asserted to be the subject of the takings.  *See Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) ("Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'") (citation omitted).  Contract rights can be the subject of a takings action.  *See, e.g.*, *Lynch v.*

*United States*, 292 U.S. 571, 579 (1934) ("Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States."); *see also United States v. Petty Motor Co.*, 327 U.S. 372, 380-81 (1946) (holding that plaintiff was entitled to compensation for government's takings of option to renew a lease).

Courts have traditionally divided their analysis of Fifth Amendment takings into two categories−regulatory takings and physical takings. The United States Court of Appeals for the Federal Circuit has recognized that "[g]overnment action that does not directly appropriate or invade, physically destroy, or oust an owner from property but is overly burdensome may be a regulatory taking." *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1151 (Fed. Cir. 2014). In assessing whether a regulatory takings has occurred, courts generally employ the balancing test set forth in *Penn Central*, weighing the character of the government action, the economic impact of that action and the reasonableness of the property owner's investment-backed expectations. *Penn Central Transp. Co.*, 438 U.S. at 124-25. "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922); *see also Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005) (regulation is a takings if it is "so onerous that its effect is tantamount to a direct appropriation or ouster").

Regulations that are found to be too restrictive, so that the regulations deprive property of its entire economically beneficial or productive use, are viewed as categorical takings. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992); *see also A & D Auto Sales*, 748 F.3d at 1151-52. Categorical takings do not require the application of the *Penn Central* balancing test. *Id.* at 1152. The Supreme Court has mainly applied the categorical test to regulatory takings of real property. *See Lucas*, 505 U.S. at 1015−19. In *A & D Auto Sales*, the United States Court of Appeals for the Federal Circuit noted that it has at times applied the categorical test to tangible personal property as well. 748 F.3d at 1151-52 (citing *Rose Acre Farms, Inc. v. United States*, 373 F.3d 1177, 1196−98 (Fed. Cir. 2004)); *see also Maritrans, Inc. v. United States*, 342 F.3d 1344, 1353−55 (Fed. Cir. 2003).[3]

---

[3] The United States Court of Appeals for the Federal Circuit has not yet addressed the question of whether the categorical takings test may apply to takings of intangible property, such as contract rights. *See A & D Auto Sales*, 748 F.3d at 1152.

In contrast, physical or *per se* takings occur when the government's action amounts to a physical occupation or invasion of the property, including the functional equivalent of "a practical ouster of [the property owner's] possession." *Transportation Company v. Chicago*, 99 U.S. 635, 642 (1878); *see also Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982). When an owner has suffered a physical invasion of his property, the Supreme Court has noted that "no matter how minute the intrusion, and no matter how weighty the public purpose behind it, we have required compensation." *Lucas*, 505 U.S. at 1015. The distinction between a physical invasion and a governmental activity that merely impairs the use of that property turns on whether the intrusion is "so immediate and direct as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it." *United States v. Causby*, 328 U.S. 256, 265 (1946).

## IV.    DISCUSSION

### A.    Plaintiff Fails to State a Plausible Illegal Exaction Claim

In the complaint, plaintiff alleges that the government illegally exacted the severance compensation in his employment agreement when the FHFA terminated his employment. Compl. at ¶¶ 60-65. The government argues that the Court should dismiss this claim for three reasons: (1) the government has not exacted any money from plaintiff; (2) plaintiff's claim is precluded because his breach of contract claim against Freddie Mac has lapsed;[4] and (3) plaintiff asserts an Administrative Procedure Act claim to review the FHFA's termination decision, which falls outside the jurisdiction of this Court. Def. Mot. at 6-10. For the reasons discussed below, dismissal of plaintiff's illegal exaction claim is appropriate.

It is well-established that this Court lacks jurisdiction to consider claims brought pursuant to the Administrative Procedure Act ("APA"). *Lawrence v. United States*, 69 Fed. Cl. 550, 554 (2006). The Court does not, however, construe plaintiff's claim as a claim seeking judicial review under the APA. In his complaint, plaintiff alleges that the FHFA unlawfully exacted his

---

[4] While the Court finds that plaintiff fails to state a plausible illegal exaction claim, the Court does not agree with the government's argument that this claim is precluded because plaintiff allowed a potential breach of contract claim against Freddie Mac to lapse. *See* Def. Mot at 8-9. The government cites to no legal authority for this novel proposition. Moreover, plaintiff can certainly pursue alternative legal remedies regarding the termination of his employment agreement.

rights to severance compensation under his employment agreement. *Id.* The Court has long exercised jurisdiction over illegal exaction claims. *See, e.g., Aerolineas*, 77 F.3d at 1572-73 (citing *Eastport S.S. Corp.*, 372 F.2d at 1007). And so, it is appropriate for the Court to examine whether plaintiff's complaint states a plausible illegal exaction claim. RCFC 12(b)(6).

A plain reading of the complaint shows that plaintiff fails to state a plausible illegal exaction claim. An illegal exaction occurs where a "'plaintiff has paid money over to the [g]overnment, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Aerolineas*, 77 F.3d at 1572-73 (quoting *Eastport S.S. Corp.*, 372 F.2d at 1007). And so, to assert a valid legal exaction claim here, plaintiff must show that: (1) money was taken by the government and (2) the exaction violated a provision of the Constitution, a statute, or a regulation. *Andres*, 2005 WL 6112616, at *2.

Here, plaintiff alleges that the FHFA's directive to terminate him without paying the severance compensation called for in his employment agreement constitutes an illegal exaction, in violation of HERA and the Due Process Clause of the Fifth Amendment. Compl. at ¶¶ 60, 71. Plaintiff concedes that he has not paid any money over to the government directly. *See generally* Complaint. And so, to state a plausible illegal exaction claim, plaintiff must show that he has paid money to the government "in effect." *Bowman v. United States*, 35 Fed. Cl. 397, 401 (1996). Plaintiff cannot make such a showing.

This Court has recognized an "in effect" illegal exaction in two distinct situations: First, an "in effect" illegal exaction can occur when the government requires a plaintiff to make a payment on its behalf to a third-party. For example, in *Aerolineas,* the United States Court of Appeals for the Federal Circuit held that where the government required an airline to make payments that by law the Immigration and Naturalization Service was obligated to make, the government has "in its pocket" money corresponding to the payments that were the government's statutory obligation to make. *Aerolineas*, 77 F.3d at 1573-74. Second, an "in effect" illegal exaction can also occur when the government exacts property which it later sells and for which it receives money. For example, this Court held in *Bowman* that money received by the government for the sale of property it had taken from a plaintiff constitutes an illegal exaction "in effect." *Bowman*, 35 Fed. Cl. at 401 (stating that "cases such as the instant one—

where the [g]overnment exacts property which it later sells and for which it receives money—must necessarily qualify for consideration under the established illegal exaction jurisdiction").

Neither of those situations are present here. Rather, plaintiff seeks to recover under an illegal exaction theory based upon the premise that the government failed to pay *him* severance compensation provided for under his employment agreement. *See* Compl. at ¶ 75. As this Court noted in an analogous case, if the plaintiff's theory of illegal exaction was correct, then "[e]very successful back pay claim this Court hears could also be characterized as an illegal exaction . . . [t]he same could be said of a breach of contract claim, as the [g]overnment would be holding the money it allegedly owed the government contractor in its pocket." *Andres*, 2005 WL 6112616, at *3. ("[W]hat distinguishes an illegal exaction from a back pay or breach of contract claim[ ] is that in an illegal exaction case the claimant has paid money over to the [g]overnment that he once had in his pocket, and in a back pay or breach of contract claim the claimant is seeking payment of money the claimant has never received."). *Id*. Because plaintiff cannot show that he has paid any money to the government directly or "in effect," he fails to state a plausible illegal exaction claim in the complaint.

### B.    Plaintiff Fails to State a Plausible Takings Claim

Plaintiff similarly fails to state a valid takings claim in his complaint. Plaintiff alleges that the FHFA's directive to terminate him without honoring the severance compensation terms of his employment agreement constitutes a takings without just compensation. Compl. at ¶ 69. In moving to dismiss this claim, the government offers five lines of defense: First, the government argues that plaintiff's contract-based takings claim is jurisdictionally barred by his lapsed contract remedies. Def. Mot. at 25-27. Second, the government maintains that plaintiff has no cognizable property interest in the severance payment terms of his employment agreement. Def. Mot. at 13-20. Third, the government argues that plaintiff fails to show that he had a reasonable investment-backed expectation that Freddie Mac would honor the severance payment terms of his employment agreement. Def. Mot. at 20-23; Def. Rep. at 7-8. Fourth, the government maintains that the FHFA's actions merely frustrated plaintiff's employment agreement and, therefore, could not effectuate a taking. Def. Mot. at 23-24. Finally, the government argues that plaintiff fails to allege that the government's actions in enacting and

implementing HERA were unauthorized.  Def. Mot. at 11-13.  For the reasons discussed below, the Court agrees that dismissal of plaintiff's takings claim is warranted.

### 1.     Plaintiff's Contract Remedies Do Not Foreclose His Takings Claim

As an initial matter, plaintiff's alternative contract remedies against Freddie Mac do not bar his takings claim.  In its motion to dismiss, the government relies upon *United States v. Sherwood*, 312 U.S. 584 (1941), to seek dismissal of plaintiff's takings claim, because plaintiff allowed his breach of contract claim against Freddie Mac to lapse.  Def. Mot. at 25-27.  The government's reliance upon *Sherwood* is misplaced.

In *Sherwood*, the Supreme Court recognized that this Court is without jurisdiction to consider a suit brought against private parties.[5]  But here, plaintiff's constitutional claims are appropriately brought against the government and Freddie Mac is not a necessary party to this action.  It is well-established that this Court has jurisdiction over takings claims brought pursuant to the Constitution.  *See, e.g.*, *Ruckelshaus v. Monsanto Co*., 467 U.S. 986, 1020 (1984); *see also* 28 U.S.C. § 1491(a)(1) (Under the Tucker Act, the Court has jurisdiction to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department . . . .").  And so, plaintiff's takings claim is not jurisdictionally barred because he could have pursued breach of contract remedies against Freddie Mac.[6]

---

[5] In *Sherwood*, a judgment creditor sought to sue the federal government under the Tucker Act to recover damages for breach of a contract that the government entered into with his judgment debtor.  Because the Supreme Court found that the judgment debtor would have been a necessary party to those proceedings, the Supreme Court held that such a lawsuit was not within the jurisdiction of the Tucker Act.  312 U.S. at 588-89.

[6]  The government also errs in relying upon *Castle v. United States*, 48 Fed. Cl. 187, 218 (2000), *affirmed in relevant part*, 301 F.3d 1328 (Fed. Cir. 2002), to argue that plaintiff fails to state a valid takings claim because of his lapsed contract remedies.  Def. Mot. at 26.  As this Court noted in *Century Exploration New Orleans, Inc. v. United States*, 103 Fed. Cl. 70, 77 (2012), "the Federal Circuit did not hold in *Castle* that a plaintiff is precluded from raising a takings claim when its asserted property rights were created by contract; rather, the court merely held that the plaintiffs in that particular case had failed to demonstrate the existence of a compensable property right under the contract." *Id*.

###### 2.    Plaintiff Has No Cognizable Property Interest in His Employment Agreement

While plaintiff's takings claim is not jurisdictionally barred, he fails to state a plausible takings claim.  In its motion to dismiss, the government argues that plaintiff has no cognizable property interest in his employment agreement because plaintiff's private contractual rights stand on more fragile footing than tangible property interests under the takings analysis and because plaintiff voluntarily entered into his employment agreement with the understanding that he would be working in a highly-regulated industry.  Def. Mot. at 14-15.  The Court must agree.

It is well established that "the existence of a valid property interest is necessary in all takings claims."  *Wyatt v. United States*, 271 F.3d 1090, 1097 (Fed. Cir. 2001).  As a result, a threshold element of a takings claim is whether a plaintiff has a cognizable property interest for purposes of the Fifth Amendment.  *Am. Pelagic Fishing Co. L.P. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004).  If a plaintiff cannot prove that he held a protected property interest, his takings claim must fail.  *Webster v. United States*, 74 Fed. Cl. 439, 446 (2006) (citing *Wyatt*, 271 F.3d at 1096 (Fed. Cir. 2001)).

In this regard, this Court has long recognized that valid contracts are property.  *See, e.g.*, *Lynch*, 292 U.S. at 579; *see also U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 19 n. 16 (1977) ("Contract rights are a form of property and as such may be taken for a public purpose provided that just compensation is paid.").  Nonetheless, background principles derived from legislation enacted prior to the execution of a contract "'define the range of interests that qualify for protection as "property" under the Fifth'" Amendment.  *Perry Capital LLC v. Lew*, No. CV 13-1025 (RCL), 2014 WL 4829559, at *20 (D.D.C. Sept. 30, 2014) (quoting *Lucas v. S. C. Coastal Council*, 505 U.S. 1003, 1028–30 (1992)); *see also Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1330 (Fed. Cir. 2012) ("Where a citizen voluntarily enters into an area which from the start is subject to pervasive Government control, a property interest is likely lacking.").

The Supreme Court has long recognized that "the 'right to exclude' is doubtless . . . 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'" *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 528 (1992) (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979).  And so, while "'[c]ontracts may create rights of property . . . when

contracts deal with a subject matter which lies within the control of Congress, they have a congenital infirmity.'" *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 223-24 (1986) ("'Contracts, however express, cannot fetter the constitutional authority of Congress. . . . Parties cannot remove their transactions from the reach of dominant constitutional power by making contracts about them.'") (quoting *Norman v. Balt. & Ohio R.R. Co.*, 294 U.S. 240, 307-08 (1935)).

The United States Court of Appeals for the Federal Circuit has twice held that the shareholders of statutorily regulated financial institutions lacked the requisite property interests to support a takings claim. *Golden Pacific Bancorp v. United States*, 15 F.3d 1066 (Fed. Cir. 1994); *Cal. Housing Sec., Inc. v. United States*, 959 F.2d 955 (Fed. Cir. 1992). In *Golden Pacific*, the Federal Circuit found that, given the existing regulatory structure permitting the appointment of a conservator or receiver, the financial institutions in that case "lacked the fundamental right to exclude the government from its property at those times when the government could legally impose a conservatorship or receivership" on the institutions. *Golden Pacific*, 15 F.3d at 1073 (quoting *California Housing*, 959 F.2d at 958) (internal quotation marks omitted). In *California Housing*, the Federal Circuit similarly held that the owner of a failed savings and loan institution had no cognizable property interest in the institution's assets, because the owner had no right to exclusive possession given that the government could place the institution into conservatorship and receivership. *California Housing*, 959 F.2d at 958. "*Golden Pacific* and *California Housing* stand for the general notion that investors have no right to exclude the government from their alleged property interests when the regulated institution in which they own shares is placed into conservatorship or receivership." *Perry Capital*, 2014 WL 4829559, at *22; *see also California Housing*, 959 F.2d at 958 (finding no right to exclude when a conservatorship or receivership is legally imposed).

The holdings in *Golden Pacific* and *California Housing* are instructive here. In this case, Freddie Mac−like the financial institutions in *Golden Pacific* and *California Housing*−operated in a heavily regulated environment. Congress established the FHFA's predecessor, OFHEO, in 1992 under the Safety and Soundness Act. *See* Federal Housing Enterprises Financial Safety and Soundness Act of 1992, Pub. L. No. 102−550, §§ 1301−95, 106 Stat. 3672, 3941−4012, 12 U.S.C. § 4561 *et seq.* Since that time, Freddie Mac has been subject to regulatory oversight, including the potential for conservatorship under which the regulatory agency succeeds to "all

the powers of the shareholders, directors, and officers of the enterprise." *See* 12 U.S.C. § 4620(a) (1992); *see also* 12 U.S.C. § 4617(b)(2)(A)(i) (2008) (authority to place Freddie Mac into conservatorship). In addition, the Safety and Soundness Act—and later HERA—expressly authorized federal regulators to prohibit plaintiff's executive compensation if the government found the compensation to be unreasonable. 12 U.S.C. § 4518(a).[7] Given this regulatory environment, plaintiff "lacked the fundamental right to exclude the government" from his property rights under his employment agreement when the FHFA placed Freddie Mac into

---

[7] The relevant portion of the Safety and Soundness Act provides as follows:

**Prohibition of excessive compensation.**

(a) IN GENERAL.—The Director shall prohibit the enterprises from providing compensation to any executive officer of the enterprise that is not reasonable and comparable with compensation for employment in other similar businesses (including other publicly held financial institutions or major financial services companies) involving similar duties and responsibilities.

12 U.S.C. § 4518(a) (1992).

The relevant portion of the Housing and Economic Recovery Act provides as follows:

**Prohibition and withholding of executive compensation.**

(a) IN GENERAL.—The Director shall prohibit the regulated entities from providing compensation to any executive officer of the regulated entity that is not reasonable and comparable with compensation for employment in other similar businesses (including other publicly held financial institutions or major financial services companies) involving similar duties and responsibilities.

(b) FACTORS. In making any determination under subsection (a), the Director may take into consideration any factors the Director considers relevant, including any wrongdoing on the part of the executive officer, and such wrongdoing shall include any fraudulent act or omission, breach of trust or fiduciary duty, violation of law, rule, regulation, order, or written agreement, and insider abuse with respect to the regulated entity. *The approval of an agreement or contract pursuant to section 1723a(d)(3)(B) of this title or section 1452(h)(2) of this title shall not preclude the Director from making any subsequent determination under subsection (a).*

12 U.S.C. § 4518 (2008) (emphasis supplied).

14

conservatorship in 2008.  *Cf. California Housing Sec.*, 959 F.2d at 959; *see also Perry Capital*, 2014 WL 4829559, at *22.

Plaintiff attempts to distinguish this case from the holdings in *Golden Pacific* and *California Housing* by arguing that he has a cognizable property interest here, because Congress enacted HERA after he entered into his employment agreement.  Pl. Opp. at 20-21.  And so, plaintiff contends that the regulatory scheme governing Freddie Mac changed when Congress enacted that law in 2008.  *Id*.  Plaintiff's argument is unavailing.

The government demonstrated during oral argument that the Safety and Soundness Act, which was in effect at the time plaintiff entered into his employment agreement, "authorized the regulator to put Freddie Mac into conservatorship and . . . provided authority to regulate executive compensation."  Tr. at 8.  Moreover, when Congress enacted HERA in 2008, Congress modified these existing authorities to make clear that the FHFA could prohibit executive compensation that had previously been approved.  12 U.S.C. § 4518(c) (2008); Tr. at 11.  Plaintiff contends that Congress changed the regulatory environment concerning executive compensation when it enacted HERA, by expressly providing that the FHFA could prohibit executive compensation previously approved by OFHEO.  But, plaintiff points to no authority in the Safety and Soundness Act that could have guaranteed that the government could not later change its mind after OFHEO approved his compensation.

Given the regulatory environment at the time he entered into his employment agreement, and the authority that federal regulators had to prohibit executive compensation, plaintiff simply could not have had a cognizable property interest in the severance compensation called for under his employment agreement.  For this reason, the Court must dismiss plaintiff's takings claim.  RCFC 12(b)(6); *see also Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

**3.      Plaintiff Fails To Advance a Plausible Takings Theory**

Even if plaintiff could show a cognizable property interest in the severance compensation under his employment agreement–which he cannot–his takings claim would fail under applicable takings precedent.

First, plaintiff fails to allege a plausible categorical or physical takings in his complaint. As discussed above, a categorical takings occurs "where regulation denies all economically beneficial or productive use of land." *Lucas v. S.C. Coastal Council*, 505 U.S. at 1015; *Lost Tree Vill. Corp. v. United States*, No. 2014-5093, 2015 WL 3448943, at *4 (Fed. Cir. June 1, 2015) (finding a regulatory takings under *Lucas* even if *de minimis* residual value remains in the land). Even assuming that a categorical takings analysis could apply to intangible property−such as plaintiff's employment agreement−plaintiff's categorical takings theory must fail, because plaintiff acknowledges that he has received 19,735 of the 78,940 shares of restricted stock units granted under his employment agreement.  Compl. at ¶ 56; Def. Rep. at 14.

Plaintiff fares no better under a physical takings theory.  A physical or *per se* takings occurs when the government's action amounts to a physical occupation or invasion of the property, including the functional equivalent of "a practical ouster of [the property owner's] possession." *Transportation Company v. Chicago*, 99 U.S. 635, 642 (1878); *see also Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 428 (1982); *Norman v. United States*, 429 F.3d 1081, 1090 (2005) (A court cannot find a physical takings of property unless the government has authorized physical occupation of, or taken title to, the property.).  But, here, the government has neither physically occupied, nor taken title to, plaintiff's property.

Plaintiff likewise fails to state a valid regulatory takings claim because he could not have a reasonable investment-backed expectation to receive his severance compensation.  "In determining whether a reasonable investment-backed expectation exists, one relevant consideration is the extent of government regulation within an industry." *Ascom Hasler Mailing Sys., Inc.* v. *U.S. Postal Serv.*, 885 F. Supp. 2d 156, 195 (D.D.C. 2012) (collecting cases); *see also Monsanto*, 467 U.S. at 1005 ("[T]he force of [the reasonable investment-backed expectations] factor [here] is so overwhelming . . . that it disposes of the takings question . . . ."). Given the regulatory scheme governing Freddie Mac, plaintiff simply could not have had a reasonable investment-backed expectation to receive the severance compensation under his employment agreement.[8]  *See* 12 U.S.C. § 4518(a).

---

[8]  The Court evaluates plaintiff's regulatory takings claim under the *ad hoc* analysis set forth in the Supreme Court's decision in *Penn Central* by weighing (1) "[t]he economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action." *Penn*

Nonetheless, plaintiff argues that he has a reasonable investment-backed expectation here, because no regulatory authority existed at the time that allowed the government to nullify the severance compensation provisions under his contract once that compensation had been approved. Pl. Opp. at 18-19. But, as discussed above, there is no provision in the Safety and Soundness Act that would have prohibited the government from changing its mind−as it did here−and later deciding to prohibit plaintiff's executive compensation in light of new circumstances within the nation's housing industry. To be sure, plaintiff voluntarily entered into his employment agreement within this regulatory environment and that environment did not change in any material way when Congress enacted HERA.

In sum, plaintiff simply could not have developed a historically rooted expectation of compensation in the event that the government placed Freddie Mac into conservatorship−as it eventually did in 2008. *See California Housing*, 959 F.2d at 958; *Perry Capital*, 2014 WL 4829559, at *23; *Connolly*, 475 U.S. at 227 ("Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end.") (citations omitted); *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Trust for Southern California*, 508 U.S. 602, 645 (1993) (same).[9] Given this, dismissal of plaintiff's takings claim is appropriate. *See Chang v. United States*, 859 F.2d 893, 898 (Fed. Cir. 1988) (affirming dismissal of Fifth Amendment takings claim for failure to state a claim upon which relief could be granted).[10]

_____

*Central*, 438 U.S. at 124. Plaintiff is not required to demonstrate favorable results under all three *Penn Central* factors in order for the Court to find a taking−it is a balancing test. *See Dist. Intown Props. Ltd. P'ship v. District of Columbia*, 198 F.3d 874, 878−79 (D.C. Cir. 1999) (*Penn Central* submits "three primary factors [to be] weigh[ed] in the balance").

[9] The remaining *Penn Central* factors−the character of the government action and economic benefit−do not revive plaintiff's takings claim. Plaintiff acknowledges that Congress enacted HERA for important reasons−"to preserve Freddie Mac's assets for the benefit of the general public so that Freddie Mac could continue fulfilling its [g]overnment-mandated mission." Compl. at ¶¶ 51, 58. Moreover, plaintiff acknowledges that he received a portion of the shares of the restricted stock provided for under his employment agreement at the time Freddie Mac terminated his employment. *Id*. at ¶ 56. And so, it would appear that the economic impact of the government's actions are far outweighed by the absence of a reasonable investment-backed expectation that the plaintiff would receive this compensation.

[10] Given the Court's determination that plaintiff has no cognizable property interest in the severance compensation under his employment agreement, the Court need not reach the question

The Court does not take the decision to dismiss this case lightly.  Plaintiff has not had the opportunity to conduct discovery to further develop his claims.  But, there are no set of material facts that plaintiff could demonstrate *via* discovery that would make either his illegal exaction claim or takings claim viable.

Plaintiff concedes that he has not paid any money to the government and there is no way to read the allegations in the complaint to state a plausible illegal exaction claim.  Furthermore, plaintiff cannot show that he has a cognizable property interest to give rise to a valid takings claim, given the regulatory scheme governing Freddie Mac when plaintiff entered into his employment agreement.  And so "[w]hile regulatory takings require a 'more fact specific inquiry'. . .  no supplementation of the factual record could alter dismissal here."  *Perry Capital*, 2014 WL 4829559, at *23 (internal citation omitted).

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the government's motion to dismiss.

The Clerk shall enter judgment accordingly.

---

of whether his takings claim is precluded by the Supreme Court's decision in *Omnia Commercial Co. v. United States*, 261 U.S. 502 (1923), and its progeny.  Nonetheless, the Court is unpersuaded by the government's argument that no takings occurred here, because the FHFA's actions merely frustrated plaintiff's employment agreement.  Def. Mot. at 23-24.  The Federal Circuit recently held in *A & D Auto Sales* that government action may give rise to a takings where the effect of the government action is direct and intended, rather than collateral or unintended, or where the action affected a general class.  *See A & D Auto Sales*, 748 F.3d at 1154.  Here, the FHFA's directive specifically directed that Freddie Mac not pay the severance compensation under plaintiff's employment agreement.  *See* Compl. at ¶ 53.  And so, plaintiff's rights under this agreement were not merely frustrated by the government's actions.  Rather, those rights were directly and intentionally terminated by the FHFA's actions.  The Court is equally unpersuaded by the government's argument that plaintiff's takings claim should be dismissed because he fails to allege that the FHFA's actions were authorized.  *See* Def. Mot. at 11-13; Compl. at ¶ 70.  To the extent that plaintiff's complaint is defective for this reason, the appropriate remedy is to amend the complaint, rather than to dismiss his claim.  *See* RCFC 15(a).

Each party to bear their own costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby

LYDIA KAY GRIGGSBY
Judge